## TUTHILL SPRING COMPANY ET AL. *v.* HOLLIDAY ET AL.

[No. 20,405.    Filed December 29, 1904.]

1. APPEAL AND ERROR.—*Supreme Court Rules.—Brief.*—Where the brief gives no condensed recital of the answers questioned, nor sets them out, no question is presented.   Supreme Court rule 22, clause 5, p. 14.
2. PRINCIPAL AND AGENT.—Where T. enters into a contract with C. by which C. agrees to sell T.'s goods at a commission, T. reserving the right to change prices on thirty days' notice, and C. sells such goods at the agreed prices, the purchaser can hold T. responsible as principal.   p. 20.
3. CONTRACTS.—*Futures.*—A contract entered into between a wholesale merchant and a manufacturer for goods to be delivered to such wholesaler to be used in his usual trade, is not in violation of the Illinois law forbidding and making void all contracts for "futures." p. 20.

From Hamilton Circuit Court; *John F. Neal,* Judge.

Action by William J. Holliday and others against the Tuthill Spring Company and others. From a judgment in favor of plaintiffs, defendant Tuthill Spring Company alone assigns error on appeal. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Thomas K. Kane, R. K. Kane* and *Thomas E. Kane,* for appellant.

*O. B. Jameson, F. A. Joss* and *H. J. Brandon,* for appellees.

DOWLING, C. J.—Action by appellees against appellant, the Tuthill Spring Company, for damages for breach of contract to deliver merchandise. The Lincoln Carriage Company and the firm of W. Hare & Sons were made garnishees in a proceeding in attachment incidental to the principal case. The complaint was in eleven paragraphs. Demurrers were sustained to the sixth and seventh paragraphs, and overruled as to the others. Answer in eighteen paragraphs. Reply in denial. Trial by the court, and special finding of facts, with conclusions of law thereon. Motions for a new trial overruled. Judgment for $2,126.74 in favor of appellees and against appellant, Tuthill Spring Company. Judgment against garnishees. Motion for modification of judgment overruled.

Errors are assigned upon the rulings on the demurrers to the third, fourth, fifth, eighth, ninth, tenth and eleventh paragraphs of the complaint, the conclusions of law, and on the motions for a new trial and for a modification of the judgment.

1. We can not consider the objections to the complaint. Counsel for appellants have failed to include in their brief a condensed statement of the contents of the several paragraphs of that pleading, as required by rule twenty-two of this court, and, because of their failure to comply with the rule, the supposed errors in the rulings on the demurrers are not available. *Chicago Terminal, etc., Co.* v. *Walton* (1905), 165 Ind. —.

The finding of facts is very long, and it would serve no useful purpose to set it out in detail. Its substance was as follows: At the dates named in the complaint the plaintiffs were partners under the firm name of W. J. Holliday & Co., and carried on the business of wholesale jobbers and

dealers in iron, heavy hardware, carriage and wagon springs, etc., in the city of Indianapolis. The defendant, the Tuthill Spring Company, a nonresident of Indiana, was a corporation organized under the laws of Illinois, and was engaged in the manufacture of carriage and wagon springs at its factory in the city of Chicago, Illinois. Its course of business was to take orders and make contracts in advance for the sale of the product of its factory. At the same time Robert K. Carter and Frank R. Beauvelt were copartners under the firm name of R. K. Carter & Co., residing and carrying on business in the city of New York. Their business was that of brokers and agents for manufacturers and others in the making of contracts for the sale of hardware, including carriage and wagon springs, they having nothing to do with the hauling, delivering, or receiving of any goods, but acting only in the making of contracts and taking and placing orders for such merchandise, and, in the conduct of their business, employing and using their own firm name in such transactions, although acting for others. All the facts concerning the business and their manner of carrying it on and conducting it were well known to the defendant, the Tuthill Spring Company, W. J. Holliday & Co., and to all the parties to the action.

In the regular course of business, R. K. Carter & Co., being desirous of obtaining the right to sell on commission the product of the Tuthill Spring Company, at certain prices, on September 24, 1898, presented to the Tuthill Spring Company their written proposal to the effect that said company should enter their orders as they should send them in, at the prices named in said proposition, and on the terms named therein, the said R. K. Carter & Co. to be paid a commission of five per cent. on sales, and stipulating that the prices named should remain in force so long as R. K. Carter & Co. should sell; thirty days' notice of any change to be given by R. K. Carter & Co. to the Tuthill Spring Company. Thereupon the Tuthill Spring Com-

pany accepted this proposition in writing indorsed thereon, signed by said Tuthill Spring Company, all of which was done at the office of R. K. Carter & Co. in New York. A copy of the proposition, with the written acceptance, is set forth in the finding. A mistake having been made in drafting the last sentence of the proposition, it was afterwards corrected by mutual consent so as to read: "It is agreed that these prices are to remain in use as long as you can sell, and should you make a change you are to give us thirty days' notice." On December 5, 1898, the Tuthill Spring Company notified R. K. Carter & Co. that it would remodel, as stated in its letter, the prices on certain seat and wagon springs fixed by the agreement of September 24, 1898, excepting some of the large hardware trade, where the former price was absolutely necessary, and giving R. K. Carter & Co. discretionary power to fluctuate in prices, and stating that, on these conditions, the contract of September 24, 1898, would be in force for the year ending September, 1899. A copy of the letter is set out. The modification was accepted by R. K. Carter & Co.

Acting under these agreements, R. K. Carter & Co. made sales and contracts of sale of carriage, wagon and seat springs to various persons, taking such contracts in their own name, notifying the Tuthill Spring Company of all such sales and contracts, with the names of the actual purchasers, and giving shipping directions; and the Tuthill Spring Company filled such orders and contracts, and charged, billed and shipped such goods to such actual purchasers accordingly, receiving payment from them, and paying R. K. Carter & Co. five per cent. commission on such sales. At all times in the finding mentioned, the business of the plaintiffs' firm of W. J. Holliday & Co. was of the kind and class of trade referred to in the Tuthill Spring Company's letter of December 5, 1898, as the special heavy hardware trade. In 1897, R. K. Carter & Co., in the course of their business, sent to the subscribers there-

for price lists containing descriptions and quotations of articles of hardware generally, of the manufactures represented by them, and W. J. Holliday & Co. became subscribers for said price lists, and so continued until the commencement of this action. R. K. Carter & Co. were never in any way employed by W. J. Holliday & Co. R. K. Carter & Co. explained to W. J. Holliday & Co. that the term "usual confidential beyond" meant a discount of two and one-half per cent. from R. K. Carter & Co.'s commission on the sale. Afterward, R. K. Carter & Co. told W. J. Holliday & Co. that, as they were anxious to send in a good many orders to the Tuthill Spring Company, they would give them all their commissions, being five per cent.

January 12, 1899, R. K. Carter & Co. sent to their subscribers, including W. J. Holliday & Co., a price list as follows: "Carriage and Wagon Springs. Seat 1¼x2x24 at 28 cts. pair. 1⅜x2x25 at 28 cts. pair. 1½x2x26 at 28 cts. pair. 1½x2x28 at 33 cts. pair. 1½x3x28 at 48 cts. pair. F. O. B. Chicago. Terms, 60 days, 2 per cent. 10 days and usual confidential beyond. Carriage—Black at $2.75; Half Bright, $2.85; Bright, $3.10. F. O. B. Chicago. Terms, 4 months or 3 per cent. cash 30 days, and our usual confidential beyond. On large orders can make special prices."

These prices were those fixed by the appellant by its contract with R. K. Carter & Co. of September 24, 1898, as modified and increased by appellant's letter to R. K. Carter & Co. of December 5, 1898. February 28, 1899, W. J. Holliday & Co. sent R. K. Carter & Co. their written order for 500 pairs of seat springs, one and one-half inches wide, two plate, twenty-six inches long, at twenty-eight cents per pair, and twenty-five pairs seat springs, one and one-half inches wide, three plate, twenty-eight inches long, at forty-eight cents per pair. This order, with special shipping directions and memorandum of terms of payment, was sent by R. K. Carter & Co. to appellant, which ac-

cepted same, and shipped a part of the merchandise ordered. April 28, 1899, W. J. Holliday & Co. sent to R. K. Carter & Co. another order for springs, with special shipping directions, which was forwarded to appellant, who acknowledged the receipt of the same. All of said orders from W. J. Holliday & Co. for springs were accepted by R. K. Carter & Co., agreeably to their contract with appellant; and appellant accepted them by its president, stamping them "O. K.," and adding his initials "F. H. T." During these transactions there was a statute of the state of Illinois prohibiting contracts for options to sell or buy at a future time any grain or other commodity, stock of any railroad or other company, or gold; prohibiting, also, forestalling of markets by spreading false rumors to influence the price of commodities therein, or the cornering or attempting to corner the markets in relation to such commodities—under a penalty of not less than $10 nor more than $1,000, or confinement in the county jail not exceeding one year, or both, and declaring void all contracts made in violation of the act.

On June 15, 1899, W. J. Holliday & Co. sent to the appellant a written order for a lot of springs, part of which were rubber head springs, and the remainder open head springs. The rubber head springs were shipped to, and received and paid for by W. J. Holliday & Co. The price for the rubber head springs was three and one-half cents per pound. On receipt of the order of W. J. Holliday & Co., appellant wrote them that it would not accept the order for the open head springs at the prices at which they were ordered, but offered to furnish them at four and three-fourths cents per pound free on board cars at Chicago, Illinois, which offer was accepted by W. J. Holliday & Co. None of the springs so contracted for to be sold and delivered by appellant to W. J. Holliday & Co., mentioned in the eighth, ninth, tenth and eleventh findings was furnished or delivered by appellant to W. J. Holliday & Co., excepting

twenty-five pairs of seat springs named in finding number eight, and certain rubber head springs mentioned in finding eleven. Appellant refused to deliver said springs, although required by W. J. Holliday & Co. to do so, and said firm were ready, able, and willing to receive and pay for them in accordance with their several contracts. The court next finds the prices and value of the springs which appellant refused to deliver, with the amount of damage sustained by W. J. Holliday & Co. on account of such failure. In its thirteenth and last finding, the court states the amount of the indebtedness of the garnishees to appellant at the time they were served with process of garnishment.

The conclusions of law were as follows:. "(1) That valid and binding contracts were entered into between the plaintiffs and defendant, the Tuthill Spring Company, for the manufacture, sale, and delivery by the latter, for and to the former, of all the springs mentioned in said findings eighth, ninth, tenth and eleventh; (2) that said statute of the state of Illinois does not apply to nor make invalid the said contracts; (3) that actionable breaches of said contracts were committed by said defendant in the failure to make and deliver the said portions of said springs as stated in the findings; (4) that plaintiffs are entitled to recover of said defendant, as damages for said breaches of said contracts, the sum of $2,126.74, together with all their costs herein, with relief; (5) that the proceedings in garnishment have been sustained, and that plaintiffs are entitled to have applied in payment on said judgment the said sum of money paid into court by said garnishees Hare & Sons, and are entitled to judgment against said Lincoln Carriage Company, as garnishee, in the sum equal to the remainder of their recovery against the principal defendant, to wit, $1,642.06 and costs."

The propositions on which counsel for appellant mainly rely for a reversal of the judgment are (1) that it appears that its contracts were with R. K. Carter & Co.,

and not with W. J. Holliday & Co., and that the latter were bound to look to R. K. Carter & Co., and not to them, for damages for any failure to deliver the springs under their accepted orders; (2) that R. K. Carter & Co. were not their agents in the transactions with W. J. Holliday & Co., and could not bind them by any order or agreement; (3) that appellant had the privilege of changing the prices of the merchandise; (4) that W. J. Holliday & Co. first violated the contract by their refusal to pay for certain springs ordered by them; and (5) that the contract entered into by appellant for the sale and delivery of springs was a gambling contract, and void under the statute of Illinois.

2. The special findings were fully sustained by the evidence, which is clear and conclusive upon every fact found. Nothing could be plainer than that R. K. Carter & Co. were the brokers and agents of appellant, and that they were so treated and recognized by them until the present controversy arose. The statement of the appellees, W. J. Holliday & Co., that they would hold R. K. Carter & Co. responsible, did not alter the relation of R. K. Carter & Co. to the appellant nor to W. J. Holliday & Co. Whether they could hold R. K. Carter & Co. responsible or not is immaterial. Appellant's contracts for the sale and delivery of the goods in controversy were with W. J. Holliday & Co., and R. K. Carter & Co. had no interest in them, beyond their commissions which appellant had agreed to pay them for obtaining the orders. Appellant had the privilege of changing the prices of springs, but, under the corrected agreement of December 5, 1898, it could do this only after thirty days' notice to R. K. Carter & Co., and no such notice was given. The evidence shows no violation of the agreement by W. J. Holliday & Co., and their refusal to agree to pay increased prices wrongfully demanded by appellant was not a breach or violation of their contract.

3. The agreements of the appellant with W. J. Holliday & Co. were not such as were prohibited by the laws of Illi-

nois, and were regular and legal in every respect. The conclusions of law were correct, and were the only conclusions authorized by the finding. The motion to modify the judgment was destitute of merit.

We can hardly conceive of a case where the right of the plaintiff to recover damages could be clearer. The nature of the transaction set forth in the proof is perfectly simple. The appellant, by its duly authorized agents, made a lawful contract with the appellees W. J. Holliday & Co. to deliver certain merchandise. It failed and refused to perform its agreement, and the appellees were damaged by such failure to the amount stated in the finding, the conclusions of law and the judgment. W. J. Holliday & Co. fully performed the contract on their part. The conclusion arrived at by the court upon the evidence was inevitable, and was clearly right.

None of the rulings complained of were erroneous. The judgment is affirmed.